[Civil No. 3145.   Filed May 31, 1932.]

[11 Pac. (2d) 850.]

CENTRAL ARIZONA LIGHT & POWER COMPANY, a Corporation, Appellant, v. DESSIE MEEK, Guardian of the Persons and Estates of CARL MEEK, MARGARET MEEK, NAOMI MEEK and BETTY RUTH MEEK, Minors, Appellee.

Messrs. Armstrong, Kramer, Morrison & Roche, for Appellant.

Mr. L. C. McNabb, for Appellee.

ROSS, J.—This is an action by Dessie Meek, in her representative capacity as guardian of the persons and property of her four minor children, against the defendant, Central Arizona Light & Power Company, for the sum of $2,227.87, which she claims was paid to the Kiwanis Club, an unincorporated service organization of Phoenix, Arizona, by contributions of the general public for the use and benefit of said children, but by said club given to and accepted by defendant for its own use.

On August 21, 1928, on West Lincoln Street, Phoenix, Richard L. Miller, his wife and two of their children, and Carl Meek were accidentally electrocuted by coming in contact with a high-tension electric wire of defendant, giving rise to claims for damages against the defendant. Surviving the Miller family were the following minor children: Louise 17, Lawrence 9, Elwyn 4, and Richard 2 years old; and surviving Carl Meek were his wife and the four minor children: Carl 7, Margaret 6, Naomi 5, Betty Ruth 3 years old. The tragic taking off of the parents and the calamitous results to the children immediately awakened in the community a very lively and sympathetic interest in their behalf. This interest took tangible form among the members of the Kiwanis Club, whose membership is made up of business men of Phoenix. Through the news columns of the local newspapers this organization let it be known that it would accept contributions for the relief, use and benefit of the bereaved children, and as a result thereof by November 15, 1928, had collected from the general public the sum of $4,455.75, which sum it deposited with its secretary, C. W. Lindsley, who under instructions from the club on or about that date used said fund to purchase annuities for Lawrence, Elwyn and Richard Miller.

Contending that the four Meek children were entitled to one-half of the donations to the club, and that it had been unlawfully diverted by the club and its depository Lindsley to the defendant, and by the defendant applied in the payment of the claims of damages against it made by the personal representative of the several Miller estates, this suit was brought.

The complaint sets out the usual formal allegations and alleges the several deaths in the Meek and Miller families, and that suits for damages against defendant were threatened; the donation by the general public of money for the benefit of the children, in equal proportions; the acceptance of such donations by the Kiwanis Club for the purposes and uses for which it was donated; then, that the trust fund was not divided equally among the eight children but

"that the attorneys for the two families, and the attorney for the defendant Central Arizona Light and Power Company negotiated a settlement of the damages which the defendant Central Arizona Light and Power Company agreed to pay the respective parties named herein, and that upon the settlement of the controversy and damages claimed by the parties injured against the defendant Central Arizona Light and Power Company, the said defendant took and received the sum of $4,455.75 donated by the people of the country at large and placed in the hands of the Secretary of the Kiwanis Club of Phoenix, which sum should have been received in equal portions by plaintiff herein and the four orphan children of the Miller family, according to the terms upon which sums were donated, as a gift which the donors intended it to be and which the Kiwanis Club of Phoenix undertook, through its officers, to transfer in equal shares to the two families. That instead of the said $4,455.75 being divided equally between the plaintiff herein and the Miller children, the defendant Central Arizona Light and Power Company took credit and received the said sum of $4,455.75 in the settlement with Jane Kistler, the duly qualified and

acting guardian of said minors (Miller children) at the time of settlement, and that the defendant Central Arizona Light and Power Company received the entire donation and contribution of the people to the families herein named, and is indebted to plaintiff, by reason of having received said donation, in the sum of $2,227.87.''

The answer consists of a general demurrer, general denial, and the following special defenses:

(1) It alleges that the defendant, with the approval of the superior court of Maricopa county, on November 17th, compromised plaintiff's claim of damages for the death of her husband, paying her therefor the sum of $6,500 cash for which she ᵉgave defendant her release and receipt as administratrix and guardian, releasing defendant ''from any and all actions, causes of actions, suits, controversies, claims, damages, debts and demands of every kind and nature for and by reason of any matter, thing or things, from the beginning of the world to the date of said release, and particularly from all claims, damages and demands accrued or thereafter to accrue, arising out of the accident or injury resulting in the death of said Arthur C. Meek, as hereinbefore described''; that by reason of such compromise and receipt plaintiff was estopped and barred from making any claim whatsoever against defendant.

(2) It alleges that the members of the Kiwanis Club solicited funds for the relief of said children, who were destitute, in the sum of $4,455.75, of which defendant contributed $824.50; that in soliciting said fund the club reserved the discretion of applying the sum for the benefit of the children or such thereof as the club might deem most needy and deserving; that in exercising such discretion it frequently consulted those persons most closely related to such children, including their representatives and the attorneys of plaintiff, and were informed by the latter that they

did not wish to participate in the benefits of any annuity which the club intended to procure for said children, or the ones it deemed most needy and deserving, but in lieu thereof requested a certain sum in cash; that the aforesaid sum of $6,500 was paid plaintiff by defendant on the request of the Kiwanis Club in order that the desires of the plaintiff could be met and to enable the club to put into force its plan of relief.

(3) It alleges that the Kiwanis Club did not deliver any part of the $4,455.75 to defendant or use any thereof for defendant's benefit; that it applied said sum in the exercise of its best judgment and discretion in buying annuities for the Miller children.

On the issues thus formed the case was tried to a jury, resulting in a verdict in favor of the plaintiff for one-half of the Kiwanis fund, less the sum of $824.50 contributed thereto by the defendant, or for the sum of $1,815.62.

The defendant has appealed, and in its assignments raises eight propositions of law. The first is that the complaint fails to state facts sufficient to constitute a cause of action. A liberal construction of the complaint gives its allegations the legal effect of charging that the Kiwanis Club was the trustee of an express trust, with power and authority to use the trust fund for the benefit of the eight Miller and Meek children, in exact and equal portions; that, instead of pursuing the power conferred by the donors of the fund, the club, co-operating with the defendant, permitted and allowed the latter to apply such fund as part payment of the Miller claim for damages against it for the deaths in the Miller family.

If money or property is turned over to one in trust for the use and benefit of another, with specific instructions as to how it shall be used for the beneficiary, the trustee has no right after accepting the trust to use the fund for any other purpose than that

named in his instructions, except, perhaps, upon the consent of the donor; otherwise the object and will of the donor would be defeated. We think the complaint shows a situation which, if established, would entitle the plaintiff to recover. In 26 Ruling Case Law 1372, section 232, it is said:

"It is an elementary principle in the law of trusts that in the execution of a trust, the trustee is bound to comply strictly with the directions contained in the trust instrument, defining the extent and limits of his authority, and the nature of his powers and duties."

See, also, 3 Pomeroy's Equity Jurisprudence, 3d ed., § 1062; 11 C. J. 352, § 70; *Bryson* v. *Bryson,* 62 Cal. App. 170, 216 Pac. 391.

It is a general rule that one who obtains trust property from a trustee knowing that it is such accepts it subject to the rights of the *cestui que trust.* 3 Pomeroy's Equity Jurisprudence, 3d ed., § 1080; 26 R. C. L. 1296, § 148.

The complaint may be subject to criticism in failing to allege defendant had knowledge of the true character of the Kiwanis fund, but that element is supplied by the evidence. Defendant was not prejudiced by the omission. The demurrer was properly overruled.

It is next said the court erred in permitting the plaintiff, after defendant had rested, to call for cross-examination the president of the defendant company and draw from him evidence that was known at the time the plaintiff was making out her case in chief, and in doing so abused its discretion. This ruling was so entirely within the court's discretion that we do not discuss it.

The court construed the receipt for $6,500, given by plaintiff to defendant, as not including the present cause of action. Defendant claims that the effect of the receipt should have been left to the jury as a

question of fact. The receipt, indeed, is broad enough to cover anything and everything, but it shows on its face that it was given in an amicable settlement of plaintiff's claim of damages for the death of her husband. It mentions no other subject matter. It could not, even though its terms covered the present cause of action, be a release thereof unless the receiptor was legally qualified to give such release. Certainly as administratrix of her deceased husband's estate, she could not release the Kiwanis Club, or its assignee with notice, from the duty of accounting to the beneficiaries of the trust fund, nor do we think her release as guardian of the children could be used to defeat the will of the donors of such fund. We think the legal effect of the written receipt was, under the circumstances, for the court to decide and not the jury.

Insisting that there is no prohibition or limitation in the instructions of the donors to the trustee as to how the trustee should dispose of the trust fund, the defendant contends that the following instruction to the jury is erroneous:

"Gentlemen of the jury, you are also instructed that no person, whether guardian, administrator of estates or otherwise, has a right to consent or waive the rights of the children in and to this fund, the purpose of the fund being fixed by the donors in subscribing and contributing—that is, if you find there was a purpose so fixed why, then, the person who handles the fund would not have any right to divert it from the alleged purpose for which it was made—it is beyond the power of the holder of said funds or of Dessie Meek as administratrix or guardian of the estate of Arthur C. Meek or guardian of the estate of Richard L. Miller and Edna Frances Miller or either of them, to waive or consent to the diversion of the same from the use as expressed in the published solicitations which were given to the public at the time the funds were received. The money raised must be

used for the purpose for which it was raised and that purpose alone and no person has a right to divert the sum in any manner or qualify the use for which the money was collected.''

We think the instruction clearly states the law applicable to the situation before the court. (See authorities above as to the duty of the trustee to follow the instructions of the donor.)

Defendant next contends that the evidence shows that the purpose of the contributions by the public was to relieve, not only the children of the Miller and Meek families, but also the surviving widow of Carl Meek, and that therefore the instructions in failing to recognize the widow as one of the beneficiaries were contrary to the evidence. We think the best way to determine the objects for which the money was contributed to the club is to refer to its initial announcement of its purpose. The ''Arizona Republican,'' a newspaper published in Phoenix, on August 29, 1928, reported the actions and proceedings of the Kiwanis Club on the 28th, which report was introduced in evidence and reads in part as follows:

''Kiwanians to 'Adopt' Children Orphaned in Wire Tragedy Here.

''Members of the Phoenix Kiwanis Club yesterday made arrangements to 'adopt' eight children in a group. They have selected for their foster children the little survivors of the tragedy which on Tuesday night of last week made a shambles of a front yard on West Lincoln Street when a high tension electric wire killed Mr. and Mrs. Richard Miller with two of their sons and took the life of Carl Meek.

''Four of the children to be aided by the Kiwanis Club are Louise, Lawrence, Elwin and Richard Miller. These lost both their father and mother. The others are Carl, Margaret, Naomi and Betty Ruth Meek. These lost their father. . . .

''The plan was launched at yesterday's luncheon in the Arizona Club dining room, where the orphaned

children were guests of the club, and where they were introduced individually to their prospective foster 'fathers.' . . .

"The money will be held by C. W. Lindsley, secretary of the club, until a depository may be selected and a plan for its use approved.

"It has not been decided as yet whether a trust fund, with the money placed at interest and the income apportioned among the children, will give as great assistance as would an annuity, or eight annuities purchased with the money now being raised, from one of the old line insurance companies. This is being investigated and a report will be made at the luncheon meeting next week. . . .

"Louise Miller, 17, is the oldest of the surviving children. Her brother, Lawrence is 9, Elwin is 4 and Richard 2. Carl Meek is 7, Margaret is 6, Naomi 5 and Betty Ruth 3.

"It is for the survivors of this accident that Kiwanis now steps forth. Each child, it is planned, will share alike in the fund that is to be raised. . . .

"If you wish to make a contribution to the Kiwanis fund, it is requested that you fill out the coupon which is printed with this article and mail it to C. W. Lindsley, secretary of the Kiwanis Club, 607 Security Building."

—which coupon read as follows:

"Mr. C. W. Lindsley, Secretary, Kiwanis Club,
    "608 Security Building, Phoenix, Arizona.
    "Here is my contribution to the Trust or Annuity Fund for the Miller-Meek children.
                    "———————— Name
                    "———————— Address."

Other excerpts from the "Arizona Republican" and the "Arizona Gazette" were introduced which defendant contends show that Carl Meek's widow (plaintiff) was to share in the trust fund. But giving the excerpts the force contended for, it is not shown that they emanated from or were authorized by the Kiwanis Club. The court, therefore, in ignor-

ing the surviving widow of Carl Meek as one of the beneficiaries of the trust fund, committed no error.

Complaint is made of an instruction which, in effect, told the jury that, if they found that the Kiwanis Club solicited and received said fund upon representations published in newspapers or otherwise, that the same would be used for the children in the Meek and Miller families, the club could not under the law use said fund for the benefit of one child as against the other children, but that each and every child was entitled to the benefit of the fund in even portions; that the club might use its discretion as to the best means of investing the fund for the children, but could not divert it to one child as against any other child or children, and neither could said fund be used under such conditions for the benefit of defendant, and, if the defendant received said fund or used it in its settlement with the Millers, knowing that it had been raised for the children of both families, their verdict should be for the plaintiff. This instruction comports with our view of the law regarding trustees and their duties in a trust such as we have here.

It seems that it was known by plaintiff's attorney and by the Miller's attorney that the defendant would pay for the Meek death $6,500, and for the deaths of the four Millers $3,544.25 cash, or one-fourth thereof for each of the Miller deaths, and that to this sum would be added the Kiwanis fund of $4,455.75, making $8,000 for the surviving Miller children. It is said, also, that plaintiff knew of this arrangement and raised no objection to it, and that she waived any claim to the trust fund, or had estopped herself as guardian from claiming any part thereof. The answer to this contention is that plaintiff was without power to waive her children's right to said trust fund and could not by her acts of omission or commission

estop the children from claiming their portion thereof.

The settlements by compromise of all the Meek and Miller claims for damages against defendant were submitted to and approved by the court in probate. The petition of the administratrix of the Meek estate and all other papers and orders in connection therewith show that the damages agreed upon for the death of Carl Meek were $6,500, and nowhere recite or indicate that such sum was augmented by any concession or surrender of the interest of the Meek children in the trust fund.

The like proceedings with reference to the damages claimed by the Miller estates show that the compromise for $3,544.25 was conditioned upon the Millers receiving the entire trust fund. The order of the court approving such compromise and settlement recites ''that the only person interested'' in the matter is the administratrix of the Miller estates, and directs ''that no notice of the hearing of said petition (for authority to compromise) need be given.'' Certainly, if the trust fund was to be diverted to the Miller children and applied in part to the satisfaction of their claim for damages, the Meek children should have had some notice thereof and an opportunity to be heard.

It may be that the accident in which the Millers and Carl Meek were killed was caused by an act of God, as contended by defendant, and that defendant could have successfully defeated a recovery on that ground, but whether that is so or not is immaterial. The claims for damages were a sufficient consideration for the compromises. When in the compromises those damages were fixed, they became the obligation of the defendant to be paid out of its funds.

The jury has determined under proper instructions that the sum of $1,815.62 belonging to the Meek

children was applied toward satisfying the Miller damages.

The judgment is affirmed.

McALISTER, C. J. and LOCKWOOD, J., concur.